Wri&ht, J.
Susan Edgel, wife of Thomas Edgel, died seized of a tract of land in Morrow county. She left three children, Frederick Edgel, Christian Edgel, and Mary Edgel. It further appears that before her marriage with Thomas Edgel she had an illegitimate child, who left issue Walter Conway and Catharine Conway, who are now claiming an interest in the estate of Susan Edgel, their grandmother.
Susan Edgel owed no debts, but at her decease her three children, Frederick, Christian, and Mary, set up claims against her estate for services, work and labor, done upon the farm owned by their mother, where they all lived. Frederick claimed for thirteen years and three months the *104 sum of $3,312.50; Christian and Mary claimed other, but less amounts.
Thomas G. Duncan, at the instance, as .it appears, of Frederick and Christian Edgel, was appointed administrator of Susan Edgel, and to him, as such administrator, the claims of the three children were presented for allowance, and rejected. Thereupon arbitrators were appointed, and the claims were submitted to them, and Frederick’s was allowed to the extent of $2,500, Christian’s to the extent of $406, and Mary’s to the extent of $525. Judgments were entered upon these awards in the Court of Common Pleas of Morrow county.
The administrator, Thomas G. Duncan, then filed a petition in the Court of Common Pleas of Morrow county, stating that Frederick, Christian, and Mary Edgel had obtained these judgments; that there was no personal estate, and asked for the sale of the real estate of Susan Edgel, which was the farm named, subject to the life estate of her husband, Thomas Edgel. To this petition the administrator made the Edgel children parties, and also Walter and Catharine Conway, Catharine being a minor.
Walter and Catharine Conway file answers and cross-petition, in which they deny any valid indebtedness against the estate of Susan Edgel. They charge that Frederick Edgel combined with the administrator, Duncan, to set up these claims, which were entirely fraudulent, the purpose being to sell the estate'upon them, the Edgel children intending to buy in and divide it, so as to exclude the Con-ways from all interest therein. They charge that the plan of referring the claims to arbitration was conceived and carried out in fraud; that the administrator refused to make any defense, or to allow any to be made, although he was informed that the claims were unjust and fraudulent, and without foundation in law or fact, and that a successful defense could be made. They further aver that the Edgel children lived on the farm with their mother, as members of- the family, and not as hired persons, and had their homes, living, and support with their father, from the pro *105 ducts of said land ; that they never rendered any services, under any contract or agreement, for wages, and that decedent was in no way indebted to them.
These cross-petitions then ask that the administrator and the Edgels may be enjoined from enforcing, or attempting to enforce, these judgments against the land or the cross-petitioners, and for general relief.
The cross-petitions are not responded to by Christian nor Mary Edgel, nor by Thomas Edgel, the' father. Duncan, the administrator, answers, denying fraud, and Frederick Edgel answers to the same purpose.
The case having been appealed to the district court, and there tried, that court ordered the property to be sold, and made a special finding, as follows :
“ On consideration whereof, and the court being fully advised in the premises, do find, as a separate finding of the law in this cause, that as the said judgments named in plaintiff’s petition are unsatisfied, unreversed, and in full force, that the parties in this cause are precluded from impeaching them, or either of them, for fraud or conspiracy, and that they are conclusive evidence of the indebtedness of the estate as far as this case is concerned.”
If it be true that these judgments, so entered upon the awards of the arbitrators, can not be impeached for fraud, and if they are conclusive evidence of the indebtedness of the estate, then the district court was right, and its judgment must be affirmed.
That a judgment can be impeached for fraud, we suppose to be a settled question. Lockwood v. Mitchell, 19 Ohio, 448. As is said in Swihart v. Shaum, 24 Ohio St. 432, the conclusiveness of the judgment depends upon the absence of fraud or collusion; and it is competent for the party injured to resort to a court of chancery for relief against such fraud or collusion. These parties, therefore, "Walter and Catharine Conway, might have filed an original bill in chancery, and, by injunction, restrained the administrator from proceeding to sell the land, on the ground that the alleged debts and judgments upon them were fraudulent, *106 and were obtained without the fault or negligence of the parties complainant. What would be good ground for such a bill in equity is good ground for a civil action under the code. Long v. Mulford, 17 Ohio St. 484; Coates v. Chillicothe Bank, 23 Ohio St. 415.
In Bank of Wooster v. Stevens it is held that a judgment may be set aside upon cross-bill in a proceeding to enforce it.
We suppose, therefore, that in an action under the code to enforce a judgment, a cross-petition may bo filed, and the judgment attacked for fraud, in the same way that it might be by an original proceeding for that purpose.
The conclusiveness of judgments in general applies to those who are parties and privies to it, and it is claimed that the Conways were neither, so far as regards the proceedings before the arbitrators and the judgments thereon. Whether they were or not, those judgments can be impeached for fraud, under proper circumstances, in the one case as well as the other.
There may perhaps be the difference that if the party was cognizant of the fraud, and failed to set it up in trial, he may be precluded from so doing after judgment, while one not a party or privy could have had no opportunity of making such defense.
The district court held that these judgments could not be impeached for fraud even, and held them to be conclusive evidence of indebtedness, even against the cross-petitions of the Conways. This would seem to have foreclosed any examination of the questions which the Conways sought to raise. This proceeding to sell was a statutory proceeding, and the code provides (sec. 604) that it shall not affect “ proceedings under the statutes for the settlement of the estates of deceased persons,” and under this language it may have been thought that a cross-petition, which is a pleading untier the code, could not be filed, whatever it might contain. But the same section of the code also provides that “ such proceedings may be prosecuted under the code whenever it is applicable.”
*107 The parties themselves seem to have voluntarily adopted the code in their form of proceedings. The petition of the administrator to sell is a petition as if under the code, with a proper verification. So of the various answers and cross-petitions; and we think that there is sufficient authority of law for filing the cross-petitions, and proceeding as was done. The code is to be liberally construed, and one of its leading ideas is to settle in one litigation all questions pertaining to that litigation. It would be contrary to its policy to turn a party away from a pending suit, compelling him to seek by another action relief which might as well be had in the existing cause.
We, therefore, hold that these judgments may, in a proper case, be impeached, as it was sought to do, in the court below, and the district court erred in holding that they were conclusive evidence of indebtedness.
The circumstances detailed in the record certainly indicated fraud, so far at least as that the court below should have examined into the question, without summarily disposing of it by a finding of law that the judgment could not be attacked at all. Without going into the testimony at length, it is sufficient to note some points which are suggestive upon the matter of unfair dealing.
If the Conways were the descendants of an' illegitimate child of Susan Edgel, it is not probable that Frederick Edgel and his brother and sister would desire that any share of their mother’s estate should go to those who were living testimonials of her disgrace. There does not appear to have been any particular connection or intimacy between the two branches of the family. The Edgel children always lived at home with their parents, and would naturally regard as intruders the Conways, who do not appear to have manifested any interest in their grandmother, other than to claim a share of her estate at her decease.
It is, therefore, not difficult to find a strong motive in the weakness of human nature inspiring Frederick to undertake the management of affairs for the sole use and be-hoof of his own family. He has an administrator appointed, *108 and then himself presents a claim of $8,812.50 for labor performed during a period of more than thirteen years. If Frederick was really working for hire, as he had no resources but his hands for a livelihood, it seems strange that he should have waited thirteen years before asking for a dollar of pay. The statute of limitations would have cut down the claim more than one-half, but it did not seem to be taken into the account.
The effort was to prove a contract with the mother for hire when the father was in possession of the property by virtue of his life estate, enjoying its profits, and he would seem to have been the party with whom to contract for the labor that produced those profits.
There was also evidence tending to show that counsel for the Conways endeavored to make appearance before the arbitrators and contest their claims, but, being overruled by the administrator, retired from further active participation in the matter. The counsel who appeared against the administrator to obtain judgments before the arbitrators now appears for him in this action.
We do not now say that these circumstances, and perhaps others looking in the same direction, establish the fraud charged, but we do say that they make such a showing as in fairness would justify an investigation. But this investigation was refused by the court below ; the finding of law was that the judgments could not be impeached for fraud, but were conclusive, and this, we think, was error, and the judgment of the district court will be reversed and cause remanded.

Judgment accordingly.